UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>   v.<br><br>160 CARTONS OF GLASS WATER PIPES, et al.,<br><br>          Defendants. | Case No.  CV 12-8965- BRO (VBKx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER COURT TRIAL** |

## I.
## INTRODUCTION

On October 17, 2012, Plaintiff United States of America ( the "Government") filed a complaint for forfeiture, claiming that 160 cartons of glassware constituted drug paraphernalia, within the meaning of 21 U.S.C. § 863. (Dkt. No. 1.) The court has federal question jurisdiction pursuant to 18 US.C. §§ 1345, 1355. There is no right to a jury trial in a civil *in rem* forfeiture action. *United States v. LeVengeance*, 3 U.S. 297, (1796).

On February 11, 2014, the Court tried this matter. After consideration of the parties' trial briefs, the witnesses and evidence presented by both sides at trial in the

1.

case, the Court makes the following Findings of Fact and Conclusions of Law.[1]

## II.

## FINDINGS OF FACT

A. Importation of the Glassware

Agents of United States Customs and Border Protection ("CBP") at the Port of Los Angeles, Los Angeles/Long Beach Seaport, seized the defendant merchandise and it remains in CBP custody. Claimant attempted to import the defendant merchandise into the United States from China.

On October 26, 2007, Claimant attempted to enter merchandise described inaccurately in entry documents as 755 cartons of "glass hookahs and parts" into the Los Angeles/Long Beach Seaport under entry number DV8-00214020, with an entered value of $82, 933.64. 160 cartons from that shipment are atissue in this case. On November 6, 2007, the shipment was examined and, on November 8, 2007, detained for possible violations of 21 U.S.C. § 863 (relating to drug paraphernalia). On December 3, 2007, CBP seized the 160 cartons of merchandise (and the uncontested 200 cartons of crack pipes) pursuant to 19 U.S.C. § 1595a(c) for violation of 21 U.S.C. § 863, having concluded that the merchandise was drug paraphernalia within the meaning of § 863. The remainder of the shipment was released.

On December 10, 2007, Claimant attempted to enter merchandise described inaccurately as 394 cartons of "glass hookahs" into the Los Angeles/Long Beach Seaport under entry number DV8-00216462, with an entered value of $61,488. On

---

[1] Any finding of fact which constitutes a conclusion of law is hereby adopted as a conclusion of law.

December 17, 2007, the shipment was examined and detained for possible violations of § 863.  On January 14, 2008, CBP seized the merchandise pursuant to 19 U.S.C. § 1595a(c) for violation of 21 U.S.C. § 863, having concluded that the merchandise was drug paraphernalia within the meaning of § 863.

On December 24, 2007, Claimant attempted to enter merchandise described inaccurately as 726 cartons of "glass hookahs" into the Los Angeles/Long Beach Seaport under entry number DV8-00217163, with an entered value of $69,617.34.  On January 8, 2008, the shipment was examined and detained for possible violations of § 863 (relating to drug paraphernalia).  On March 5, 2008, CBP seized the merchandise pursuant to 19 U.S.C. § 1595a(c) for violation of 21 U.S.C. § 863, having concluded that the merchandise was drug paraphernalia within the meaning of § 863.

B.  Witness Srikanth Ryali

CBP Supervisory Import Specialist Srikanth Ryali testified at trial that the defendant merchandise was not properly characterized as hookahs or hookah parts or accessories, as it had been described in the entry documents submitted to CBP by Claimant and his Customs broker.  Instead, the items are bongs and bong parts, which are prohibited from import into the United States, and are not found in the Harmonized Tariff Schedule.  After reviewing photographs and examining the actual glassware itself, Specialist Ryali testified that the glassware consisted of bongs or bong parts.

With respect to the air shipment, Mr. Ryali (who had no knowledge of the facts

surrounding that shipment, or the detention and release of the merchandise) testified that there was a significant difference between the air shipment and the October 2007 shipment containing the allegedly identical bowls because the latter included other items that were clearly bong accessories, and the context of the later shipment made it easier to identify the bowls as drug paraphernalia. Mr. Ryali testified that CBP would not intentionally allow the importation of drug paraphernalia under any circumstances.

C. Deputy Fitzgerald

Los Angeles Sheriff's Department Detective Regan Fitzgerald (Narcotics Bureau) testified as an expert witness in the areas of drug interdiction and identification of drug paraphernalia. Detective Fitzgerald testified that the defendant merchandise consisted of bongs and bong parts, and distinguished bongs from hookah pipes. Specifically, Detective Fitzgerald testified that bongs are designed specifically to be used to smoke marijuana and other controlled substances, and are in fact used for that purpose. Hookahs, to the contrary, are designed to be used with flavored tobacco and similar products and, while capable of being used to smoke marijuana, are not commonly used for that purpose. Deputy Fitzgerald opined that the merchandise was drug paraphernalia within the meaning of 21 U.S.C. § 863. Specifically, Deputy Fitzgerald found the placement of the bowls at the bottom of the glassware, and lack of hoses identified the items as bongs, not hookah pipes. Deputy Fitgerald testified that such a design was consistent with the purpose of a bong, that is, to provide the user with an immediate and potent rush of marijuana.

According to Deputy Fitzgerald, the defendant merchandise consists of complete bong (or water pipe) assemblies, or parts of bong assemblies, including:

    a. Bong bowls used to burn marijuana being smoked in the bong;

    b. Bong stems, one end of which extends into the water reservoir of the bong, and the other end of which may be packed with marijuana or accept an ash catcher or bowl;

    c. Bong ash catchers, the downward-oriented connector of which is seated into a stem that has been inserted into a bong;

    d. Bongs packaged with a separate stem and bowl, or ash catcher; and

    e. Bongs packaged with separate stem/bowl (no ash catcher).[2]

D. Claimant's Testimony

Claimant testified that prior to his attempts to import the defendant merchandise, he had imported in an air shipment approximately 10 boxes of bowls that were identical to some of the bowls included in the October 2007 shipment from which some of the defendant merchandise was seized. Those boxes were initially detained by CBP, but were later released after Claimant advised the agency that the bowls were hookah accessories. Claimant also testified that the portion of the October 2007 shipment that was released to him consisted of merchandise that was identical to some of the defendant merchandise. He believed that the release of those items (both the air shipment and the portion of the October 2007 shipment) meant that the merchandise was legal to import. With respect to the released portion of the October

---

[2] A bong is a glass smoking apparatus consisting of a hollow tube seamlessly joined to a round base intended to contain water though which smoke is filtered.

2007 shipment, the only evidence of what was released was Claimant's testimony, but it appears likely that if the released portion did in fact consist of merchandise similar or identical to the defendant merchandise, the release of that merchandise was a mistake.  Claimant also acknowledged that he could have provided a same to CBP to determine whether the glassware could be imported, but did not do so.  He further stated the people at a trade show assured him that the glassware consisted of hookah pipes.

### III.

### CONCLUSIONS OF LAW

**A. Burdens of Proof**

Because this case is exempt from the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), the government was required only to establish probable cause to believe that the defendant merchandise is subject to forfeiture in order to prevail here.  The law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws is to be followed in forfeitures under 19 U.S.C. § 1595a.  See 18 U.S.C. § 983(i) (2)(A) (governing proceedings under a "civil forfeiture statute," and defining that term to exclude "any . . . provision of law codified in Title 19).

Under the applicable customs law,

> [i]n all suits or actions . . . brought for . . . forfeiture . . ., where the property is claimed by any person, the burden of proof shall lie upon such claimant . . . provided, that probable cause shall be first

6.

shown for the institution of such suit or action . . .

19 U.S.C. § 1615; See also United States v. One TRW Model M14 7.62 Caliber Rifle, 441 F.3d 416, 418 (6th Cir. 2006) (forfeitures excluded by § 983(i) are governed by 19 U.S.C. § 1615).

In other words, "[u]nlike most civil and criminal proceedings, the burden of proof is on the 'accused' owner or possessor, provided that the government first make a preliminary showing of probable cause to believe that the [defendant] was used [as alleged]."  United States v. One Twin Engine Beech Aircraft, 533 F.2d 1106, 1107 (9th Cir. 1976).  Probable cause is defined as "reasonable grounds for belief of guilt, supported by less than prima facie proof, but more than mere suspicion" -- which is judged not with clinical detachment but with a common-sense view to the realities of normal life.  United States v. One 56-Foot Motor Yacht Named The Tahuna, 702 F.2d 1276, 1282 (9th Cir. 1983); United States v. Single Family Residence, 803 F.2d 625, 628 (11th Cir. 1986).

"To meet its burden, the government must show that it had reasonable grounds to believe that the [defendant] was used [as alleged], supported by less than prima facie proof but more than mere suspicion."  Id. at 1282, citing United States v. $4,255,625.39, 762 F.2d 895, 904 (11th Cir. 1985).  Circumstantial evidence may support the government's establishment of probable cause, United States v. $93,685.61 U.S. Currency, 730 F.2d 571, 572 (9th Cir. 1984), as is "otherwise inadmissible hearsay."  United States v. 3814 Thurman Street, 164 F.3d 1191 (9th Cir.

7.

1999). See also, U.S. v. $5,644,540.00 U.S. Currency, 799 F.2d 1357, 1363 (9th Cir. 1986).

Further, the facts and circumstances upon which a finding of probable cause is based may include the "sum total . . . and the synthesis of what the police have heard, what they know and what they observe as trained officers." United States v. Strickland, 902 F.2d 937, 942 43 (11th Cir. 1990). Ultimately," [t]he determination of probable cause in a forfeiture proceeding simply involves the question of whether the information relied on by the government is adequate and sufficient to warrant the belief by a reasonable person that the [defendant] was used [as alleged]". The Tahuna, 702 F.2d at 1283.

### B. The Merchandise is Drug Paraphernalia

Section 1595a(c) of Title 19 of the United States Code provides for forfeiture of merchandise to the United States as follows:

> Merchandise which is introduced or attempted to be introduced into the United States contrary to law shall be treated as follows:
> . . .
> (2) The merchandise may be seized and forfeited if --
> (A) its importation or entry is subject to any restriction or prohibition which is imposed by law relating to health, safety, or conservation and the merchandise is not in compliance with the applicable rule, regulation or statute. . .

Pursuant to 21 U.S.C. § 863(a) (3), it is unlawful for any person to import drug paraphernalia. Section 863(d) defines drug paraphernalia as follows:

> The term "drug paraphernalia" means any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance, possession of which is unlawful under this chapter. It includes items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, PCP, methamphetamine, or amphetamines into the human body, such as –
>
> > (1) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls. . .
> >
> > (12) bongs

21 U.S.C. § 863 (d).

The defendant merchandise was imported or attempted to be imported into the United States and constitutes drug paraphernalia as that term is defined in § 863(d).

Despite Claimant's erroneous characterization of the merchandise as "hookah pipes," this Court concludes that they are bongs, and are therefore barred from entry into the United States. Such items fall squarely within the scope of § 863, as found by the Supreme Court. In Posters 'N' Things, LTD. v. United States, 511 U.S. 513 (1994), the Court considered 21 U.S.C. § 857, a statute that was later repealed and re-enacted as § 863, that criminalized the importation of drug paraphernalia and the use of the U.S. Mail to distribute such products. Id. at 516 n.5. The definition of the term "drug paraphernalia" was lifted from § 857 when § 863 was enacted. 511 U.S. at 518. Among the items at issue in Posters were bongs, described by the Court as "'a

water pipe that consists of a bottle or a vertical tube partially filled with liquid and a smaller tube ending in a bowl, used often in smoking narcotic substances.'" 511 U.S. at 515 n.1 (quoting the American Heritage Dictionary). As detailed herein, this Court finds that all of the contested defendant merchandise here consists of bongs or parts of bongs (ash catchers, stems or bowls).

Discussing the standards to be applied in determining whether certain items fit within the statutory definition of drug paraphernalia, the Supreme Court noted first that an item is "designed for use" within the meaning of the statute if it is principally used with illegal drugs by virtue of its objective features, i.e., features designed by the manufacturer." 511 U.S. at 519. Expanding on that point, the Court held

> [t]he objective characteristics of some items establish that they are designed specifically for use with controlled substances. Such items, *including bongs*, cocaine freebase kits, and certain kinds of pipes, have no other use besides contrived ones (such as use of a bong as a flower vase). Items that meet the "designed for use" standard constitute drug paraphernalia *irrespective of the knowledge or intent of one who sells or transports them*.

Id. (emphasis added).[3]

In determining whether an item constitutes drug paraphernalia, in addition to all other logically relevant factors, the existence and scope of legitimate uses of the item in the community and expert testimony concerning its use are among the factors that may be considered. See 21 U.S.C. § 863 (e). Indeed, the Posters Court later

---

[3] The merchandise here also falls within the "primarily intended" for use provision of § 863. See 511 U.S. at 521 ("We conclude that the term 'primarily intended . . . for use' . . . in to be understood objectively and refers generally to an item's likely use.").

10.

addressed the specific question of what knowledge on the part of the violator would constitute a violation of the statute, holding

> we do not think that the knowledge standard in this context requires knowledge on the defendant's part that a particular customer actually will use an item of drug paraphernalia with illegal drugs. It is sufficient that the defendant be aware that customers in general are likely to use the merchandise with drugs.

Id. at 524. Moreover, there is no requirement that the violator had specific knowledge that the items constituted drug paraphernalia within the meaning of the statute. Id.

The facts here establish more than mere suspicion. It is undisputed that the merchandise was attempted to be imported into the United States. The evidence and testimony of the witnesses clearly demonstrated that the defendant merchandise constitutes drug paraphernalia. While the Court believes the testimony of Claimant, his belief that the glassware consisted of hookah pipes is not relevant to the Court's finding. The defendant merchandise is hereby ordered forfeited pursuant to 19 U.S.C. § 1595a(c) (2) (A).

### C. Claimant's Defense and Equitable Estoppel

Claimant bears the burden of proving by a preponderance of the evidence that the defendant merchandise is not subject to forfeiture. United States v. One Twin Engine Beech Airplane, 533 F.2d 1106, 1110 (9th Cir. 1976); United States v. 100 Cuban Cigars, Etc., 35 F.Supp.2d 405, 407 (E.D. Pa. 1999). Claimant must use competent evidence to sustain his burden of proof. See United States v. One 1968 Piper Navajo Twin Engine Aircraft, 594 F.2d 1040, 1042-43 (5th Cir. 1979). He

cannot do so.

Claimant made two basic arguments in defense of the forfeiture: first, that the merchandise consists of hookahs and hookah parts and therefore are not drug paraphernalia within the meaning of § 863; and second, that the government allowed him to import identical items in prior shipments (and perhaps as part of the first shipment involved here), and is therefore estopped from arguing that the defendant merchandise is drug paraphernalia.  Claimant testified at trial that he believed the bongs and bong parts were hookahs because he was told that by vendors who described the merchandise to him as a modern hookah.  Claimant testified that he was never advised by any government representative, either orally or in writing, that the defendant items were hookahs or hookah parts.  He further conceded that he knew he could have provided a sample to CBP, but did not do so.

As detailed above,  Claimant's first argument fails because this Court has found that the defendant merchandise consists entirely of drug paraphernalia.

Claimant's second argument fails first because the fact that Claimant was allowed to import drug paraphernalia on one or two prior occasions is not a basis for applying equitable estoppel against the government.  Claimant stated that (1) he imported identical merchandise on a previous occasion that was allowed through; and/or (2) a portion of the October 26, 2007 shipment (from which the defendant 160 cartons of glass water pipes and 200 cartons of crack pipes were drawn) that was returned to him consisted of the same type of merchandise that was seized as drug

paraphernalia.

A portion of the October 26, 2007 shipment was released to Claimant, the government retained no records concerning what merchandise was released. Claimant, relying on the entry documents, contends that the similarity of the item numbers proves that the merchandise was identical (or substantially identical) to the defendant merchandise. There are two reasonably likely potential explanations for what happened. Either the released merchandise, notwithstanding the similarities of the numbers on the entry documents, was materially different from the defendant merchandise and was released because it was inspected and determined not to be drug paraphernalia, or the released merchandise was also drug paraphernalia and was released due to a mistake. In any event, Claimant has failed to carry his burden to show that the items previously imported where identical.

Claimant maintained that the glassware was released by mistake, and that the government should be estopped from forfeiting the defendant merchandise because it released the same or substantially similar merchandise to him. There are four traditional elements that must be established for a party to rely upon the equitable doctrine of estoppel: (1) the party to be estopped must know the facts; (2) it must intend that its conduct will be acted upon or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. <u>Watkins v. United States Army</u>, 875 F.2d 699, 709 (9th Cir. 1989). However,

where the party to be estopped is the government, as here, the party seeking to take advantage of the doctrine must establish the additional element of affirmative misconduct on the part of the government that goes beyond mere negligence. Id. at 707; Morgan v. Heckler, 779 F.2d 544, 545 (9th Cir. 1985). Further, the doctrine will be applied only where the government's wrongful act will cause a serious injustice to the party asserting estoppel that outweighs the possibility of damage to the public interest. Salgado-Diaz v. Gonzales, 395 F.3d 1158, 1166 (9th Cir. 2005).

Here, it appears likely that the released property was drug paraphernalia and was mistakenly released. Under that assumption, the release was inadvertent, not intentional. Moreover, the government did not intend that Claimant would act upon the inadvertent release of the illegal merchandise. Claimant could not reasonably have concluded that the government intended to ratify his importation of merchandise where a portion of it was seized as drug paraphernalia and virtually identical merchandise was released. The only reasonable conclusion to be drawn from that occurrence is that a mistake was made. Claimant either made no effort to seek clarification from the government as to why a portion of the merchandise was released and the rest seized, or did not receive a response to such an inquiry. In either case, he was not justified in concluding that the released property was not drug paraphernalia while the seized property was. Nor is there any evidence that he relied upon the government's conduct to his injury.

Most importantly, however, Claimant fails to provide evidence of affirmative

misconduct on the part of the government.  This is unlike a situation where the government provides "official misinformation," such as an affirmative assurance that the released property was found not to constitute drug paraphernalia.  See e.g., Schuster v. C.I.R., 312 F.2d 311 (9th Cir. 1962); United States v. Wharton, 514 F.2d 406 (9th Cir. 1975).  Moreover, the Court finds that no serious injustice will result from the forfeiture of the defendant merchandise, and the public's interest in preventing the importation of drug paraphernalia will suffer if the defendant merchandise is allowed to be imported and sold in the United States.  As a result, the Court concludes that Claimant has failed to establish a basis for the application of the equitable doctrine of estoppel here.

Finally, while CAFRA includes an affirmative innocent owner defense, it does not apply to forfeitures sought under 19 U.S.C. § 1595a.  United States v. Davis, 648 F.3d 84 (2d Cir, 2011); United States v. Aircraft, 839 F. Supp. 2d 1243, 1250 n.10 (N.D. Ala. 2011) (following Davis and collecting cases).  Even assuming the statutory innocent owner defense did apply in the Customs context, it does not apply to contraband.  See United States v. 144,774 Pounds of Blue King Crab, 410 F.3d 1131, 1135 (9th Cir. 2005) (holding that the exemption applies not only to property that is contraband per se, but to property that "may be legally possessed in some circumstances but that becomes illegal to possess in others," discussing illegal importation).

///

For the reasons set forth above, the Court orders the defendant merchandise forfeited to the United States pursuant to 19 U.S.C. § 1595a.  Claimant's motion to compel and request for sanctions is denied as moot.

**IT IS SO ORDERED.**

Dated:  March 10, 2014                   _____
                                          HONORABLE BEVERLY REID O'CONNELL
                                          UNITED STATES DISTRICT COURT JUDGE

16.